IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

JIMMIE D. TAYLOR                                                              PLAINTIFF

                 v.                          Civil No. 08-3053

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                       DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Jimmie Taylor, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.**      **Procedural Background**

The plaintiff filed his applications for DIB and SSI on March 28, 2006, alleging an amended onset date of November 30, 2005,[1] due to chronic bronchitis, lung problems, sinus problems, right wrist and ankle problems, left knee problems, depression, and organic brain syndrome. (Tr. 78-79, 99, 123, 126). His applications were initially denied and that denial was upheld upon reconsideration. Plaintiff then made a request for a hearing by an Administrative

---

[1] Plaintiff originally alleged an onset date of January 2004. (Tr 336-337). However, at the hearing, this date was amended to November 30, 2005, the last date plaintiff actually worked. (Tr. 336-337).

AO72A
(Rev. 8/82)

Law Judge (ALJ). An administrative hearing was held on September 28, 2007. (Tr. 331-363). Plaintiff was present and represented by counsel.

At this time, plaintiff was 47 years of age and possessed a ninth grade education. (Tr. 24). He had past relevant work ("PRW") experience as a fiberglass laminator. (Tr. 92-93, 99-101, 128, 129-130, 334-340).

On March 25, 2008, the ALJ found that plaintiff's chronic bronchitis, arthritis of the left knee, and organic brain syndrome were severe but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 16). After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity to lift 20 pounds occasionally and than 10 pounds frequently; sit for 6 hours during an 8-hour workday (with normal breaks); stand and/or walk for 2 hours during an 8-hour workday (with normal breaks); must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation; and, is limited to performing work where the interpersonal contact is incidental to the work performed, the complexity of the tasks is learned and performed by rote with few variables and little judgment, and the supervision required is simple, direct, and concrete. (Tr. 19). With the assistance of a vocational expert, the ALJ found plaintiff could perform work as a production worker. (Tr. 25).

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on August 6, 2008. (Tr. 3-5). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. # 7, 8).

## II. **Applicable Law**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

3

### A. The Evaluation Process:

The Commissioner's regulations require his to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination

4

concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

In the present case, plaintiff suffers from a knee impairment that causes pain and swelling in his leg and foot and an impairment to his right wrist. Plaintiff purportedly injured his right wrist in 1999 when pushing a canoe off a rock. (Tr. 322). In February 2000, plaintiff stated that he was struck on the knee and was diagnosed with chondromalacia. (Tr. 322). He also reported a history of at least 3 prior arthroscopies to his knee, but the dates of these procedures were not certain. In 2001, an x-ray of plaintiff's knee revealed small effusion, but no evidence of a fracture or subluxation. (Tr. 312). He reported knee pain in February 2005 and was prescribed Lorcet, Demerol, and Phenergan. (Tr. 288-290). In May 2005, plaintiff twisted his left knee. (Tr. 175-178, 285-287). He reported increased pain and difficulty ambulating. The doctor noted plaintiff's history of tendon and cartilage injuries to this knee. An examination revealed mild swelling. Plaintiff was diagnosed with knee strain and given a knee immobilizer and crutches. The doctor also administered a Toradol injection and prescribed Lortab and Motrin. (Tr. 175-178).

In August 2005, plaintiff injured his left knee, lower back, and right wrist while lifting a feed sack. (Tr. 170-174, 280-284). X-rays of his lumbosacral spine showed no marked abnormalities with minimal degenerative changes of the facet joints. X-rays of his knee were also normal. Plaintiff was diagnosed with knee and lower back pain and prescribed Ultram, Flexeril, a knee immobilizer, and crutches. (Tr. 170-174).

5

On February 15, 2007, plaintiff was treated in the emergency room for complaints of left hip, knee, and ankle pain and swelling. (Tr. 258-260). He reported that his symptoms had increased since the temperatures had become colder. Dr. Melissa Quevillon noted some mild swelling of the left knee, a scant amount of crepitus, pain with valgus and varus, pain with plantar flexion, no palpable a cord, and minimal discomfort with rotation of the hips. A left lower extremity venus doppler ultrasound was normal. Dr. Quevillon diagnosed plaintiff with left knee pain and prescribed Ultram and Motrin. She also recommended that he follow-up with a orthopedist. (Tr. 258-260).

On March 1, 2007, plaintiff presented at the Mountain Home Christian Clinic with complaints of left knee pain, left hip pain, swelling in his left foot and ankle, and an increase in his gastroesophageal reflux ("GERD") symptoms. (Tr. 219-222). An examination revealed tenderness to palpation over the grater trochanter on the left knee, mild tenderness over the sciatic nerve on the left, a decreased range of motion in all planes, and pain with abduction, flexion, and extension. Mild epigastric tenderness was also present. The doctor noted that plaintiff kept his wallet in his left back pocket. He diagnosed plaintiff with left trochanteric bursitis and GERD. Plaintiff was advised to take his billfold out of his back pocket, sleep with a pillow between his knees, and to perform hip stretching exercises. He was then prescribed a Medrol dose pack, physical therapy, and Reglan. (Tr. 219-222).

On May 3, 2007, plaintiff voiced multiple complaints to Dr. Gaston. (Tr. 214-215, 297-398, 303-305). He reported left knee pain for the last three years, hip and leg pain for the last six months, problems with his knee giving out, difficulty sleeping secondary to pain, and depression. Dr. Gaston noted that plaintiff was unable to work due to right lower extremity pain.

6

As a result, plaintiff had become depressed. He also had a history of reflux for which he had been previously prescribed Nexium and had also taken Zyrtec for his allergies. An examination revealed an appropriate mood and affect with a somewhat abnormal gait secondary to pain. Dr. Gaston prescribed Nexium, Zyrtec, Wellbutrin XL, Feldine, and Ultram. (Tr. 214-215).

On August 16, 2007, plaintiff complained of breathing problems, knee problems, and numbness and paresthesia of the right hand. (Tr. 300-302, 291-296). He stated that he experienced difficulty gripping and dropping things. The doctor noted that the swelling in his left knee had improved. Plaintiff stated that he was taking a "little blue pill" that helped the swelling in his left foot and ankle. An examination revealed clear lungs with no rales, wheezes, or rhonchi. There was no swelling or deformity in his left knee, but the doctor noted joint line tenderness to palpation. His range of motion was normal with the exception of hamstring tightness. A lumbar exam revealed decreased spacing generally and tenderness over the sciatic notch. The doctor diagnosed him with an upper respiratory infection, left knee pain an instability with abnormal gait affecting kinetic chain and resulting in hip and ankle pain, and carpal tunnel syndrome of the right hand. Plaintiff was instructed to continue the cryotherapy, stretches, and anti-inflammatories. He was also fitted for a wrist splint. (Tr. 300-302).

We note that the only document that even purports to assess plaintiff's physical limitations is a Case Analysis form filed by Dr. Steve Owens, a non-examining consultative doctor, on September 12, 2006. (Tr. 198). *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence). The document merely reads, "Mild knee OA and mild lumbar spondylosis. Not much else. Non-severe physically." However, Dr.

Owens was not in possession of plaintiff's medical records from 2007, when he complained of continued pain and limitation resulting for his knee impairment. He was also not privy to the 2007 treatment note indicating that plaintiff had carpal tunnel syndrome of his right wrist and was experiencing difficulty gripping items with his right hand. Because the evidence does indicate that plaintiff's knee and wrist impairments were severe impairments, we believe remand is necessary to allow the ALJ to reconsider the severity of these impairments as well as the limitations resulting from them. *See Page v. Astrue,* 484 F.3d 1040, 1043 (8th Cir.2007)(holding that if the impairment would have no more than a minimal effect on the claimant's ability to work, then it is not severe). It seems clear to the undersigned that plaintiff's knee would affect his ability to perform work involving crouching, crawling, balancing, stooping, climbing, and bending. Further, his wrist impairment would likely affect his ability to grip and finger items.

On remand, the ALJ is also directed to address interrogatories to plaintiff's treating doctors, asking them to review plaintiff's medical records during the relevant time period; complete an RFC assessment regarding plaintiff's capabilities during the time period in question; and, give the objective basis for their opinion, so that an informed decision can be made regarding plaintiff's ability to perform basic work activities on a sustained basis during the relevant time period in question. *Chitwood v. Bowen*, 0788 F.2d 1376, 1378 n.1 (8th Cir. 1986); *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985). A consultative examination would also be helpful in determining plaintiff's limitations.

AO72A
(Rev. 8/82)

**IV.     Conclusion**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 22nd day of January 2010.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)